[Civ. No. 2650.   Fourth Dist.   Feb. 26, 1942.]

LOUISE McNOWN, Respondent, v. PACIFIC FREIGHT LINES (a Corporation), et al., Appellants.

Calvin H. Conron, Jr., for Appellants.

Brittan & Mack and Preston, Braucht & George for Respondent.

SCHOTTKY, J. pro tem. — Appellants appeal from a judgment awarding respondent $10,000 for personal injuries resulting from a collision which occurred on November 18, 1939, at a point approximately 2 miles north of Lebec on Highway 99 in Kern County.

The accident occurred at about 5:50 p. m., at dusk, but late enough in the evening that driving lights were necessary.

The defendant Joseph Frank Stephens was operating a truck and trailer 54 feet in length in a southerly direction toward Los Angeles on U. S. Highway 99. He had turned off the U. S. Highway 99 onto the old highway, which intersects the new highway at an angle, and proceeded some 150 to 200 feet south on the old highway, where he turned his truck and trailer back toward U. S. Highway 99. In returning to the main highway he did not use the roadway or cross-road which was some distance to the south, but turned into an open space between two intersections. After maneuvering his equipment around until it faced in a northeasterly direction, an operation requiring several minutes, he parked two feet from the west edge of the paved portion of U. S. Highway 99, and waited some two minutes. While in this position he saw the headlights of the automobile in which plaintiff was riding, and which was operated by her husband, Darl D. McNown, approaching from the south some 300 to 400 yards away. Watching the approaching lights all the while, he drove upon the highway in low gear at a speed which he estimates from 1 to 4 miles per hour turning toward the north. The paved portion of Highway 99 at that point was 30 feet in width, having three traffic lanes, and as the front of the truck operated by appellant Stephens entered the east lane he saw the McNown car some 150 yards away and noted that it had not slackened its speed. He continued forward until the front of the truck was 3 feet from the east edge of the highway and then stopped. In that position the truck and trailer, facing northeast, blocked the entire paved portion of the highway with the exception of 3 feet on the east side. At the time he stopped in this position the McNown car was only 50 or 60 yards away.

On the right-hand side of the truck, that is the southeasterly side as the truck stood on the highway, there were two small amber clearance lights, one on the front and one on the back, and also clearance lights on the front and back of the trailer. The automobile being driven by the husband of plaintiff was towing a second automobile, a Hudson four-door sedan. The automobiles were coupled with a new late model tow bar. Mr. McNown testified that as he approached the point of the accident he was traveling between 40 and 45 miles per hour and that he knew this because he had glanced at his speedometer. When about 190 feet from the truck he first saw a clearance light on the east side of the road and commenced to apply

his brakes. When approximately 175 feet away, he saw the image of the truck before him and applied his brakes firmly, and turned his car slightly to the left. The brakes of the towed automobile were not attached to the car being driven. As the front car was turned, the two automobiles jack-knifed and the front car turned around so that it headed south, the rear car swinging into an arc so that the rear end of the car collided with the right rear end of the truck. Marks of the front car left upon the highway measured 205 feet in length and the skidding or broadside marks left by the towed car as it swung around measured 169 feet.

Appellant's first contention is that the verdict lacks evidentiary support because the undisputed and uncontradicted evidence shows that D. D. McNown, husband of plaintiff, was guilty of contributory negligence as a matter of law proximately causing the accident (a) in failing to see the lighted truck in time to avoid the collision, (b) in driving a car and towing another without adequate brakes, (c) in traveling at an excessive speed, and (d) in failing to use due care and caution under the circumstances.

In view of the familiar rule so often announced by our courts that contributory negligence is a question of fact for the jury to determine and that an appellate tribunal will not disturb the finding of a jury upon that issue if there is any substantial evidence or any reasonable inference in support of that finding, it is difficult for us to understand how appellant can seriously urge such a contention. We have read the entire record carefully and find therein ample evidence to support the implied finding of the jury that the negligence of appellant Stephens was the proximate cause of the collision and that the respondent's husband was not guilty of contributory negligence. In fact, the testimony of appellant Stephens alone is sufficient to support such finding of the jury. The jury could easily have found from appellant Stephens' testimony alone that he was negligent in driving equipment 54 feet long onto Highway 99 from an unusual place, when it was practically dark, at an angle at which his headlights were not visible from the south, when he saw an automobile approaching from the south only 350 yards away, and in continuing to drive such equipment across the highway until it blocked practically the entire thoroughfare, and that said negligence of appellant Stephens was the proximate cause of the collision. And the jury could easily have found

from the testimony of appellant Stephens that respondent's husband was not guilty of contributory negligence.

It is unnecessary to prolong this opinion by reciting the many other parts of the record supporting the finding of the jury upon this issue.

Appellants next contend that the trial court "erred in refusing appellants' instructions pertaining to negligence in two respects: (a) in refusing to fully instruct the jury as to the duty of respondent's husband to look, and (b) in refusing to instruct as to the requirement of brakes on the trailer coach."

The court instructed the jury upon the rules of contributory negligence and proximate cause and specifically, with regard to looking, gave the following instructions:

"You are instructed that 'even though the operator of an automobile may be rigidly within the law he still remains bound to anticipate that he may meet persons at any point on the street, and he must, in order to avoid a charge of negligence, keep a proper lookout for them and keep his vehicle under such control as will enable him to avoid a collision with another person using proper care and caution, and, if the situation requires, he must slow up and stop'."

"You are instructed that it is the duty of the driver of a motor vehicle to anticipate that he might meet other persons or vehicles at any point on the highway, at all times, and that he must keep a proper lookout for them, and keep his machine under such control as to enable him to avoid a collision with another person using care and caution, and that a failure, if any, upon his part, to use such care, is negligence."

Defendant offered and the court refused the following instructions:

"If you find from the evidence in this case that the said D. D. McNown, husband of said plaintiff and with whom plaintiff was riding at the time of this accident, did not have such control of his car which he was operating as to enable him to stop the same, or so slacken his speed so as to avoid the collision with the vehicle of the defendants, but that by the exercise of ordinary care and caution in operating said car in the manner in which and at the speed at which an ordinary prudent person could have operated said car, he would have had his car under such control as would have enabled him to avoid the collision which occurred, then the said D. D.

McNown was guilty of negligence, which negligence is imputable to the plaintiff herein.''

"You are instructed that the said D. D. McNown, husband of the plaintiff and with whom plaintiff was riding at the time of said accident, as he drove along the highway at the time and place stated in this action, was under the duty to exercise ordinary care to anticipate vehicles along the highway ahead of him, and to exercise ordinary care to see such vehicles in sufficient time and at a sufficient distance to avoid a collision.''

"You are instructed that the said D. D. McNown, the husband of the plaintiff and with whom plaintiff was riding at the time of said accident, was under the duty and care to keep a lookout for objects and vehicles ahead on the highway, and that it was his duty to see that which was in plain sight, and that the said D. D. McNown was under the duty to act as a person of ordinary prudence under the circumstances in respect thereto.''

The court elsewhere instructed the jury that any negligence on the part of respondent's husband was imputable to her, and in our opinion the requested instructions add nothing to those given by the court. A trial judge should instruct the jury fully as to the law in clear and concise language but it is not necessary or proper for the court to give argumentative instructions. The requested instructions were properly refused.

Appellants offered and the court refused the following instruction:

"You are instructed that section 670.5 of the Vehicle Code of the State of California provides as follows: 'Brakes on Trailer Coaches. Every trailer coach having a weight of fifteen hundred pounds or more equipped for the road but exclusive of passengers shall be equipped with brakes which can be operated by the driver of the towing vehicle and which brakes shall be adequate, supplemental to the brakes on the towing vehicle, to enable such combination of vehicles to comply with the requirements of section 670 (a).' ''

Appellants argue that the Hudson automobile which was attached to the automobile in which respondent was riding by a tow-bar, was a trailer coach and comes within the following definition in section 52 of the Vehicle Code:

"A 'trailer coach' is a vehicle without motive power designed for human habitation and for carrying persons and property on its own structure and for being drawn by a motor vehicle.''

Appellants contend that the automobile attached to the car in which plaintiff was riding by a tow-bar had no motive power, carried a load upon its structure, and was designed for human beings and therefore human habitation, and that because it weighed more than 1500 pounds the court below erred in refusing to give to the jury the instruction setting forth the provisions of section 670.5 of the Vehicle Code.

In the Trailer Camp and Coach Law found in Deering's General Laws, Act 5131b, the same identical definition of a trailer coach is given as in section 52 of the Vehicle Code, and a trailer camp is defined as a place where space is rented to users of trailer coaches.

We think that the court properly refused to give said offered instruction. It is a matter of common knowledge that a trailer coach is one thing and an automobile being towed is another, and there is nothing in the definition above given that can change an automobile into a trailer coach.

Appellants' final contention is that the verdict of $10,000 is excessive and indicates that it must have been the result of passion or prejudice on the part of the jury. The general rule is well stated in *Bellman* v. *San Francisco High School District*, 11. Cal. (2d) 576 [81 Pac. (2d) 894], as follows:

"Before an appellate court may interpose its judgment as to the sum which will compensate a plaintiff for personal injuries, it must appear that the recovery is so excessive, when compared with a sum reasonably warranted by the evidence showing the nature and extent of the injuries received, as to shock the sense of justice and raise the presumption that the amount was arrived at as the result of passion and prejudice rather than upon a fair and honest consideration of the facts. . . ." (See, also, *Sassano* v. *Roullard,* 27 Cal. App. (2d) 372 [81 Pac. (2d) 213].)

The evidence showed that respondent was 43 years of age, and that even though she had suffered an injury in 1937, she was in good physical condition at the time of the accident; that she did her housework, worked in her garden, helped her husband at his place of business, went horseback riding, hunting and fishing, and that she was, at the time of the accident, returning from a 7,000-mile automobile trip; and that as a result of the accident she was confined in the hospital for nearly three weeks; that she suffered great pain; that she had become extremely nervous; that she could no longer do her

housework or work in her garden or do any of the other things above enumerated; that she still had severe pains in the back of her head and still had severe pains in her back, due to the dislocation of her "tailbone" or coccyx, which prevented her from sitting in a normal position without making her legs and back seem numb.

Appellants' chief argument on this point is that the dislocation of the coccyx suffered by respondent may be remedied by an operation and therefore cannot be considered permanent, and appellants argue that respondent has failed in her duty to minimize the damages and has failed to use reasonable efforts to restore herself to health. The jury and the trial court had before them medical testimony in this regard. It does not appear from the testimony what would be the extent of the recovery through such an operation. Nor does it appear that such an operation was previously suggested to respondent and refused by her. The trial judge in his minute order denying a motion for new trial stated:

"In the opinion of the Court the verdict in this case is quite liberal. Yet I cannot under the law hold that it is excessive."

The trial judge had the opportunity of hearing all of the witnesses testify and of observing respondent, and in addition to this, the trial judge had a right to weigh the evidence upon the question of damages.

Taking all of the evidence on the question of damages into consideration, we cannot say that the amount of the verdict was so large as to shock the sense of justice and raise the presumption that the amount awarded was the result of passion or prejudice.

In view of the foregoing, the judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.