[Civ. No. 4189.   Third Appellate District.—March 16, 1931.]

ANNE ROWE, Respondent, v. LEONARD RENNICK, Appellant.

Joseph M. Raines and Downey & Chester for Appellant.

Milton D. Sapiro for Respondent.

MR. JUSTICE PLUMMER DELIVERED THE OPINION OF THE COURT.—The plaintiff had judgment against the defendant in the sum of $10,800, for and on account of personal injuries suffered in an automobile collision alleged to be due to the negligence of the defendant. From this judgment the defendant appeals.

The complaint alleges that on or about the seventeenth day of March, 1929, the plaintiff was riding in a certain automobile which was being driven in a southerly direction along the state highway running between the towns of Fairfield and Cordelia, in the county of Solano; that on the same day the defendant was driving an automobile in a general northerly direction along the same highway; that the defendant so carelessly, negligently and unlawfully drove and operated his automobile as to cause the same to collide with the automobile in which the plaintiff was riding, thereby causing the plaintiff serious personal injuries, which injuries were alleged to be as follows: A fracture and dislocation of the coccyx; a fracture of the fifth

lumbar vertebra on the right side in the lamina; and severe bruises of the body and legs. The complaint further alleges that by reason of such injuries plaintiff has been unable to attend to her ordinary duties as housewife, etc., has employed doctors, has incurred expenses, etc. The complaint also contains a second cause of action wherein it is alleged that at the time the defendant was driving his automobile in a general northerly direction along the highway referred to, the defendant was under the influence of intoxicating liquor, and so carelessly and negligently operated and drove his automobile as to cause the same to collide with the automobile in which the plaintiff was riding, causing the personal injuries set forth herein. The answer of the defendant denies that he carelessly, negligently or unlawfully drove his automobile, or caused the same to collide with an automobile in which the plaintiff was riding; denies that the plaintiff has suffered the injuries alleged in her complaint, and likewise denies that at the time of the collision the defendant was under the influence of intoxicating liquor, in any degree whatsoever; and further denies the allegations set forth in plaintiff's second cause of action that he operated his automobile in a careless or negligent or unlawful manner.

Upon this appeal the appellant alleges three reasons why the judgment should be reversed: 1. That the court erred in permitting the plaintiff to prove the facts and circumstances surrounding and attendant upon the collision; 2. That the court erred in the admission of testimony, and that counsel for the plaintiff was guilty of misconduct prejudicial to the defendant; and 3. That the judgment is excessive.

After the jury had been impaneled, and before any opening statement had been made, counsel for the defendant made the following statement: "Mr. Raines: Your Honor, before counsel proceeds, I think it is now in order for the defendant, under the conditions here, to make a statement as to his position, that is, as to the position of the defendant Rennick, so that it will expedite the matter and clarify the issues to be presented to the jury in this case. The defendant, of course, is charged with negligence; we are admitting, what we call admitting, liability in this action; we are admitting responsibility for the accident itself, which, under the conditions, will limit the question to

go to the jury as to the amount of damages to be awarded the plaintiff. I make this statement at this time so that this may guide counsel and ourselves in making the statement and the conduct of the case itself.'' Following this admission on the part of the defendant, counsel for the plaintiff made an opening statement detailing the facts and circumstances of the collision, and then introduced testimony to prove the facts and circumstances as outlined in the opening statement. To all of these matters the defendant interposed timely and appropriate objections, which the court overruled.

While the argument of counsel for appellant is confined to the second error alleged, to wit, the admission of certain testimony, it is necessary in the consideration thereof, to determine whether, under the state of the pleadings, the plaintiff in this case was entitled to introduce testimony as to the facts and circumstances constituting the grounds upon which it sought to charge the defendant with liability for the injuries suffered by the plaintiff.

It will be noted that the defendant did not admit the facts and circumstances resulting in the collision. The admission is only, in the language of counsel, ''what we call admitting liability in this action; we are admitting responsibility for the accident itself''. This, under the settled law of this state, does not preclude the plaintiff from introducing testimony to substantiate the allegations in the complaint.

In the case of *Martin* v. *Pacific Gas & Elec. Co.*, 203 Cal. 291 [264 Pac. 246], the defendant attempted, by an admission, to narrow the issues to the simple question of the amount of damages to be awarded, and made there, just as we have here, a limited admission of responsibility. The Martin case, however, presented a much broader question than that tendered upon this appeal. This will appear by a reference to the Martin case as reported in the opinion of the District Court of Appeal, [(Cal. App.) 255 Pac. 284], where the facts contained in the transcript are set forth at length. There, the court permitted the testimony to be admitted detailing the facts and circumstances of previous acts of negligence, extending over a considerable period of time. This court held the admission of such testimony to be erroneous. In the hearing had in the

same case by the Supreme Court it appears that a majority of the court agreed with the holding of this court as to the error in the admission of such extraneous matters, but it also held that the admission of such testimony was not of such a prejudicial character as to warrant a reversal, as judgment only could, under the circumstances of the case, go in favor of the plaintiff. What is said by the Supreme Court in the Martin case, *supra,* however, is directly in point in this case, where only the circumstances surrounding the immediate act of negligence were testified to by the witnesses. We quote from the opinion the following: ''Indeed, it never has been the law that it was or could be error to prove even admitted allegations of the pleadings if the patience of the trial court would permit it. 'It does not lie in the power of one party, however, to prevent the introduction of relevant evidence by admitting in general terms the fact which such evidence tends to prove, if the presiding justice in his discretion, deems it proper to receive it. Parties, as a general rule, are entitled to prove the essential facts, to present to the jury a picture of the events relied on. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight. No exception lies to the admission of relevant evidence under such circumstances.' (26 R. C. L., sec. 40, p. 1036; *Dunning* v. *Maine Cent. Ry. Co.,* 91 Me. 87 [64 Am. St. Rep. 208, 39 Atl. 352].) The fact that the evidence admitted might, as an incidental feature thereof, be inflammatory or have a tendency to unduly arouse the jury, does not render such evidence inadmissible. In *Mohn* v. *Tingley,* 191 Cal. 470, 491 [217 Pac. 733], it is said: 'The chief objection to all the evidence of which complaint is made is that it served to stir up the prejudice of the jury and arouse sympathy in respondent's favor. But the evidence being admissible, its effect upon the jury would furnish no reason for its rejection.' Likewise no prejudicial error can be committed by reading the pleadings to the jury, even though the legal effect of them has been admitted. (*Knight* v. *Russ,* 77 Cal. 410, 414 [19 Pac. 698].) We therefore hold that the said attempt of counsel to limit the proof was abortive and the trial court committed no error in its rulings in respect thereto.''

To the same effect we may cite the following: *Jones* v. *Allan*, 85 Fed. 523; 5 Wigmore on Evidence, 2d ed., p. 607, sec. 2591; *People* v. *Fredericks*, 106 Cal. 554 [39 Pac. 944]; *Eesley Light & Power Co.* v. *Commonwealth Power Co.*, 172 Mich. 78 [137 N. W. 663]; *Thomson* v. *Crouth*, 218 Mass. 524 [106 N. E. 159].

With the holding of these cases in view, we may now consider the testimony alleged to be prejudicial. A witness on the part of the plaintiff testified that he had a conversation with the defendant immediately after the collision, a considerable portion of which is confessedly immaterial, and we will quote only that portion to which appellant's argument is directed. ''I asked him his name (referring to the defendant); he said 'J. L. Doaks'. Q. Did you have any further conversation with him? A. Well, yes, I did. Q. Well, what else, if anything, was said if anything, between you and the occupant of the car? (referring to the defendant). A. He said, 'I'm in a hell of a hole'; and I said, 'I know you are'. A. He said, 'I'm drunk and I know I'm drunk; I don't care about anything. Is the baby all right?' (defendant looking up and seeing the baby). I said, 'The baby is all right'; and then I asked him where he lived, and got no answer. Q. Anything else said? A. He said, 'Don't worry, everything is all right. I got 100,000. or 200,000. dollars insurance, and you don't have to worry about insurance; I will take care of everything; but is the baby all right?' ''

■ Upon motion of defendant the court struck out the answer in so far as it related to insurance, and directed the jury to disregard the same. The witness further testified as to the intoxicated condition of the defendant, which was corroborated by other witnesses. The admission of the answer of the defendant is assigned as prejudicial error, and the eliciting of the same as misconduct on the part of counsel for the plaintiff, necessitating a reversal of the judgment.

A number of cases have had to do with testimony disclosing the fact of insurance. Before considering these cases we may call attention, very properly, to the character of the answer made by the defendant that he had one hundred thousand or two hundred thousand dollars insurance, as being the vaporings of a drunken mind, and not a statement of any facts whatever. Even if it be assumed

which seems to us incredible, that the defendant was insured to the amount of $100,000 or $200,000, as he stated, the question still remains whether his answer elicited in the manner in which it was, constituted prejudicial error, irrespective of the order of the court striking it out and directing the jury to disregard the same.

This court has had to do recently with several cases in volving reference to insurance. In *Loggie* v. *Interstate Transit Co.*, 108 Cal. App. 165 [291 Pac. 618], it appears that counsel for one of the parties, on cross-examination, asked the question relating to insurance. The objection thereto being sustained by the court, was followed by this statement: "Then, for the purpose of the record, if the court please, we desire to make the offer to prove that Mr. Loggie did carry a policy of insurance on his automobile, which policy was paid to him for the damage to his automobile, and we make the offer at this time to make that proof." The court sustained the objection to the statement of counsel, and upon motion therefor, granted a new trial on the grounds of the misconduct of counsel in bringing before the jury the question of insurance. In the opinion written by Presiding Justice Finch, a number of cases are referred to where such testimony has been held inadmissible, and also where the effort of counsel to introduce such matters before the jury were held misconduct and prejudicial error. The opinion just referred to also sets forth the fact that the measure of the influence of such conduct upon the jury was primarily for the trial court, and if the trial court was of the opinion that the verdict had been influenced thereby, an appellate court would not hold to the contrary, and the order of the trial court granting a new trial was affirmed.

In the case of *Squires* v. *Riffe et al.*, 211 Cal. 370 [295 Pac. 517] (see, also, [Cal. App.] 287 Pac. 360), this court, in an opinion written by Presiding Justice Finch, and later adopted by the Supreme Court, held that admitting testimony that an automobile owner, stating that she had liability insurance, constituted error. A significant portion of the opinion in that case is pertinent here, and controlling: "Referring to the proof of a settlement disclosing the fact that the defendant was indemnified by a policy of insurance, the court said: 'The evidence of the settlement

alone, not connected up with any act or admission of the defendant, and concerning which he had nothing to do, was clearly inadmissible in evidence. The error in admitting it might not, in and of itself, require a reversal, but coupled with the avowed purpose and successful attempt of plaintiff's counsel to get before the jury not only the fact of settlement, but also that the settlement was made by the insurance carrier of the defendant, puts the case in a position where section 4½ of article VI of the Constitution will not save the judgment. The natural tendency of a line of examination that suggests to the jury that the defendant is indemnified against any judgment for damages against him, is highly prejudicial to his rights, especially in a closely balanced case where the evidence otherwise would be easily sufficient on appeal to support a verdict either for the plaintiff or for the defendant. Such attempts on the part of counsel have frequently been held to be improper and prejudicial. . . . From an examination of the record in this case it is impossible for us to state that the jury would not have found a different verdict had the objectionable examination not taken place and the evidence not been admitted.' '' This quotation was taken from the case of *Citti* v. *Bava,* 204 Cal. 136 [266 Pac. 954].

In the case at bar, from an examination of the record, we find that the jury could not, consistently with their oaths, have rendered any verdict for the defendant. It is not a question of where the testimony is evenly balanced, but one where it is only a question of how much.

In the case of *Bach et al.* v. *C. Swanston & Son,* 105 Cal. App. 72 [286 Pac. 1097], this court had under consideration an objection to testimony which disclosed the fact of liability insurance, and it was there said: ''There is abundant authority to the effect that efforts of plaintiff's counsel to get before the jury the facts that defendant is insured against loss is prejudicial where the evidence is closely balanced, justifies a reversal. However, in this case we do not feel that such a drastic result should follow, first, because the inference is not clear that the purpose in making said remarks was to get before the jury the fact that appellants were insured or that the jury so interpreted the said remarks, next, because the court promptly instructed the jury to disregard them, and lastly, because the evidence

in this case, upon the issues involved, is by no means equally balanced, but, on the contrary, largely preponderates in favor of respondents.'' This, of course, is true of the instant case.

In the case of *Symons* v. *Wooden et al.*, 97 Cal. App. 39 [274 Pac. 987], it appears that immediately after an automobile collision, the defendant made the following statement: ''Do not pay any of the damages; we are carrying insurance; we are fully protected; don't pay the repair bill; present your bill to the Surety Company; it will be paid.'' This was stricken out by the court, and the jury directed not to consider the same. Further on, counsel in his argument claimed that this statement was material. We quote as follows from the opinion: ''In his argument to the jury counsel for plaintiff stated that Hanby's statement was material as an admission against interest. The decisions support this contention.'' (*Lahli* v. *McMenamin*, 204 Cal. 415 [268 Pac. 644]; *Dullanty* v. *Smith*, 203 Cal. 621 [265 Pac. 814]; *McPhee* v. *Lavin*, 183 Cal. 264 [191 Pac. 23].) In the case of *McPhee* v. *Lavin*, *supra*, the alleged error of disclosing the fact of insurance was before the Supreme Court, and there, as here, was connected with an admission of liability, and the court held the admission of such testimony proper. We quote from the opinion: ''The errors of law assigned upon admission of testimony over defendant's objection and motions to strike, so far as in any way suggestive of prejudice, arise from the admission of evidence, as part of the conversation had with defendant, of defendant's declaration to plaintiff immediately after the collision that he carried accident insurance that would provide for plaintiff if he had suffered injury. As this was admitted as tending to show an acknowledgment of responsibility by defendant for the accident, we think it was proper evidence.'' (See, also, the case of *Potter* v. *Driver*, 97 Cal. App. 311 [275 Pac. 526]), where this court held that testimony showing insurance, being connected with an answer tending to establish the defendant's acknowledgment of responsibility, was admissible.

A number of other cases cited by counsel for respondent might be reviewed showing that where the fact of insurance is disclosed in an answer, coupled with an acknowledgment of liability, prejudicial error cannot be assigned, but the

authorities which we have heretofore cited, we think sufficient to establish the following rules: First, that where the answer disclosing the insurance is inextricably coupled with an acknowledgment of liability, the answer is admissible; second, that where it appears from the testimony in the record that no verdict could have been rendered for the defendant, the admission of testimony relative to insurance is not alone sufficient to authorize a reversal of the judgment. It must further appear that the judgment returned was the result of passion or prejudice. This involves the third assignment of error, to wit, that the verdict is excessive.

In the case of *Potter* v. *Driver, supra,* this court quoted from *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 Pac. 513], the rule to be followed in determining whether damages are excessive, to wit: "That it is only where the verdict is so grossly disproportionate to any reasonable limit of compensation, warranted by the facts, as to shock the sense of justice and raise a strong presumption that it is based on prejudice or passion rather than on sober judgment, that the judge is at liberty to interpose his judgment against that of the jury." (Citing *Martin* v. *Shea,* 182 Cal. 130 [187 Pac. 23]; *Grant* v. *Los Angeles Transfer Co.,* 45 Cal. App. 731 [188 Pac. 294]; *Anderson* v. *San Francisco Oakland Rys.,* 61 Cal. App. 21 [214 Pac. 289].)

That the jury may have erred in judgment, or awarded damages in a greater sum than would have been fixed by an appellate court, furnishes no legal reason for a reversal of the judgment. ■ The fixing of the amount of damages to be awarded an injured person rests primarily upon the every-day experience and common judgment of the jury, dependent upon the circumstances of the particular case involved, subject to the revision and determination of the trial judge who has had the opportunity, as well as the jury, to learn all the facts at first hand, and the responsibility resting upon the trial judge cannot be shifted to an appellate court unless the award is so great and so disproportionate to the injuries suffered as to clearly show the verdict to be a result of something other than a proper consideration of the testimony in the case—there must be a showing of passion, prejudice or other undue influence. As we have shown, the record contains no testimony that should not have been submitted to the jury. The rulings

of the trial court appear to be wholly unobjectionable. We are presented, really, with the simple question of the amount of the verdict in a case where liability stands confessed.

Is the verdict so excessive as to shock the conscience and lead us to the conclusion that it is not fairly supported? The record shows that the plaintiff in this case was a married woman of about twenty-six years of age, the mother of one child; that at the time of the collision the plaintiff was hurled back and forth in the automobile, suffered a fractured coccyx (the coccyx being the last segment of the spine), a fracture of the lamina of the lower lumbar vertebra. As a result of the injuries, respondent suffered much pain, and continued to suffer pain up to the time of the trial. While the respondent did not spend much time in the hospital, she was confined to her bed for a considerable period. The testimony shows that the dislocated coccyx projected into the rectum so that its functions became very acute. The coccyx is the center of very sensitive terminal nerves of the spine, and a fracture thereof produces much pain. It also appears that the fractured vertebra resulted in much pain to the respondent; that these pains will continue unless the respondent undergoes a rather serious surgical operation; that it would be necessary to remove the coccyx or the broken portion thereof; that the respondent is compelled to wear a brace, and must continue to wear the same unless she undergoes what one of the doctors called "two surgical operations"; that the respondent, though a married woman, will have to forego motherhood in the future, unless she is willing to suffer abnormal pains. Besides these injuries, the respondent has been rendered nervous, and also is unable to sit in a normal position.

Some of these facts which we have related were disputed by testimony introduced on the part of the appellant, but what we have stated we think the jury was entitled to accept as true, as following from a clear preponderance of the testimony.

In an extended note covering approximately 196 pages appended to the case of *Quinn* v. *Chicago, Mil. & St. Paul Ry. Co.*, 46 A. L. R. 1928, are collected a large number of cases dealing with verdicts in personal injury cases. A considerable number of these cases involve causes which

were tried at a time when the purchasing power of money was much greater than at present, which fact must be taken into consideration when considering an award of damages, as an award of damages in the sum of $7,500 made prior to the World War would, in purchasing power, we think, equal the award in this case. The difference in the purchasing power of money is a common fact of which we think we may properly take notice.

An examination of the cases quoted in the annotation to which we have referred, and which is so extensive that we cannot catalogue any of them, leads to the conclusion that the verdict in this case, based upon the injuries suffered by the plaintiff, is in nowise disproportionate to corresponding cases there quoted.

The recent case of *Wulferdinger* v. *Pickwick Stages System*, 109 Cal. App. 647 [293 Pac. 704], recently decided by this court, is pertinent here. In this case the plaintiff suffered an injury to the coccyx. There was no fracture of any portion of the vertebra. An award of $7,000 was approved. In *Putman* v. *Pickwick Stages*, 98 Cal. App. 268 [276 Pac. 1075], the plaintiff suffered a shoving forward of the fifth lumbar vertebra, and an award of $7,500 was approved. In *Perry* v. *McLaughlin*, (Cal. App.) 287 Pac. 354, an award of $12,500 was approved. The injuries suffered by the plaintiff in that case, as shown by the facts set forth in the record, were not more serious than the injuries suffered by the plaintiff in this action.

A number of other cases have been cited by respondent but their consideration appears to us unnecessary. We find nothing in the record justifying a conclusion that the verdict is excessive or that the amount thereof has been increased by reason of any improper conduct upon the part of counsel, or error of the court in the admission of testimony.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 15, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 14, 1931.