[Civ. No. 5599. Third Appellate District.—January 8, 1937.]

EMILIO GARDINI, Respondent, v. ARAM ARAKELIAN, Appellant.

Chester O. Hansen and Cooley, Crowley & Supple for Appellant.

Conley, Conley & Conley for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment of $18,000, which was rendered against him in a suit for damages for personal injuries sustained by the plaintiff in an automobile casualty. The cause was tried with a jury.

The appellant contends that the verdict and judgment are not sustained by the evidence, that the amount of damages is excessive and that the court erred in giving to the jury an instruction on the doctrine of last clear chance.

Just before sunset on June 28, 1934, the plaintiff was driving his Ford automobile easterly on the public highway near Madera. At the same time the defendant was traveling westerly along the same highway in his Ford V-8 machine. The roadway is straight and level in that locality. It is 54 feet in width with a 24-foot paved strip along the center thereof. It also contained good graveled shoulders on either side of the paved portion. Adjacent to the northerly border of the highway, nearly opposite the point where the accident occurred, Howard's grocery store is located. It is situated 10 or 15 feet back from the northerly edge of the right of way. The space between the store and the highway is flat, level and well adapted for the use of vehicles. An approach extends from the highway to the store from points about 40 feet both north and south of the building. At the time of the accident there were no other machines in sight on the highway except one automobile which was following about 300 yards behind the plaintiff's car. The plaintiff's machine was running 25 or 30 miles an hour, and the defendant's car was traveling 45 to 55 miles per hour.

The evidence is radically conflicting, but we are of the opinion it sufficiently supports the implied findings of the jury that the defendant was guilty of negligence which proximately caused the injuries sustained by the plaintiff, and that the plaintiff was free from contributory negligence. The defendant testified that as he approached Howard's grocery store, driving westerly, he observed the plaintiff's machine coming from the opposite direction on the wrong side of the paved portion of the roadway; that he first thought the plaintiff was crossing the highway to drive to the store on the northerly side, but when the plaintiff's machine passed the entrance to the store the defendant realized that he did not intend to stop there; that he concluded the plaintiff had not discovered his car approaching, so he repeatedly blew his

horn, and then turned his machine sharply to his left to drive around the plaintiff's car on the southerly side of the pavement. He had ample room and opportunity to turn his machine toward the store on his right-hand side. The defendant said that just at the moment he turned his machine the plaintiff suddenly changed his course to his right to drive back onto his proper side of the highway, and that the cars collided on the southerly side of the paved portion of the roadway. Two boys who were repairing an automobile near the store also testified they saw the plaintiff's car approaching toward the store on the northerly side. It is suggested their machine intervened between the boys and the approaching car and that they were mistaken in regard to the location of the plaintiff's automobile on the highway. These boys testified that defendant was driving his machine 45 to 55 miles an hour. A highway patrolman also testified to skid-marks which he found on the northerly portion of the surface of the pavement extending a distance of 37 feet to the point where the plaintiff's machine rested on the highway after the accident occurred. The evidence is uncontradicted, however, that the plaintiff's car turned completely over after the collision occurred. It is suggested that if these skid-marks had been made by the plaintiff's car, they could not possibly lead to the position occupied by the machine after it had rolled over on the pavement. Notwithstanding the fact that this evidence tends to corroborate the defendant's theory of the accident, the credibility of the witnesses, and the weight of the evidence, were matters solely for the determination of the jury.

On the contrary, Mr. and Mrs. Griggs, two disinterested witnesses, were following in their automobile about 300 yards behind the plaintiff's car. They watched him closely because they thought he was an acquaintance. It was perfectly light. There were no other vehicles on the highway. Nothing obstructed a clear view of the plaintiff's car. Both of these witnesses testified repeatedly that the plaintiff drove his machine at a moderate rate of speed, 25 or 30 miles an hour, straight along his proper side of the paved portion of the roadway, and that he did not cross to the northerly side. There is nothing in the record to discredit their testimony. The surrounding circumstances indicate that it would have been impossible for the plaintiff to have crossed to the

northerly side of the pavement directly ahead of the Griggs machine into the very pathway of the defendant's approaching car without Mr. and Mrs. Griggs observing such a conspicuous and heedless act. The plaintiff's machine passed the entrance to the store, according to the defendant's testimony, and obviously there was no occasion for the plaintiff to cross to the wrong side of the highway. Regarding the course which was maintained by the plaintiff's automobile, John Griggs testified:

"It looked to me like Mr. Gardini *was on the right hand side of the road,* and this here other guy . . . shot in front of him. . . . Q. Mr. Arakelian's car hit Gardini's? A. Yes. . . . And it looked to me like it just turned over. . . . Yes, I saw it, but he looked to me like he cut across and hit this fellow (Gardini). Q. Who cut across? A. Arakelian. . . . Gardini turned to his left when he (Arakelian) turned right . . . into him."

Mrs. Griggs testified in that regard:

"I had been watching all along, because I thought it was someone we knew. . . . It (Mr. Gardini's car) was on the right hand side. . . . Q. All of that time Arakelian was on the wrong side of the road, as you saw it? A. It looked like about the middle of the road. . . . Q. How close would you say the Gardini car was to the dirt on the south side of the oiled portion of the road? . . . He was pretty close to it. . . . Q. As he traveled down this course . . . where were his right wheels, in reference to the south edge of the pavement? . . . A. About a foot. Q. About a foot, and he kept that course all the time? A. Yes sir. Q. Did he change the direction of his automobile at all? A. No sir. Q. And you continued to watch him all the time? A. Yes sir."

In view of this positive testimony that the plaintiff's machine was not on the northerly side of the highway at all, but that he continued to drive his machine ahead of the Griggs car along the proper side of the pavement, and that the collision occurred on the south side of the highway, we may not hold, as a matter of law, that the defendant was not guilty of negligence, or that the plaintiff was guilty of contributory negligence. Under such circumstances the verdict and judgment are adequately supported by the evidence and may therefore not be disturbed on appeal.

In support of a judgment for damages for personal injuries sustained as a result of an automobile collision, on

an appeal based on the ground of alleged insufficiency of the evidence, it will be assumed the jury accepted any reasonable view of the evidence which is justified by the record. When there is substantial evidence to support the findings and verdict on any such reasonable theory a court of appeal is without authority to disturb the judgment. Even though reasonable minds may differ with respect to the conclusions of the jury under such circumstances the reviewing court may not interfere therewith. (*Baillargeon* v. *Myers,* 180 Cal. 504 [182 Pac. 37]; *Andreen* v. *Escondido Citrus Union,* 93 Cal. App. 182 [269 Pac. 556]; 3 Cal. Jur. 948, sec. 179.)

■ The preceding rule applies with equal force to testimony regarding physical facts, such as the presence of skid-marks on the paved surface of a highway, provided there is other substantial evidence leaving a reasonable doubt as to whether the plaintiff's tires caused such marks, or indicating that, for some other reason, they do not constitute satisfactory proof of contributory negligence on his part. The burden is on the defendant to show contributory negligence. In the present case there is substantial evidence that the plaintiff's automobile was not on the northerly side of the highway and therefore could not have caused the skid-marks in question.

■ The amount of the judgment is not excessive. Prior to the accident the plaintiff was in every respect an ablebodied man. Two physicians testified to the serious nature of the injuries which he received. There is no conflict regarding this testimony. The plaintiff was thrown from his machine by the impact of the vehicles. He was picked up in an unconscious condition and taken to the hospital, where he remained unconscious for more than a week. He was confined to the hospital for a period of several months suffering from numerous serious bruises, contusions and incisions of the scalp, face and body. He suffered a major brain contusion which one of the doctors testified would be permanent. He had no recollection of any of the incidents connected with the accident. He continues to suffer severe headaches. His legs were weak, wobbly and unmanageable. After he was discharged from the hospital he was afflicted with spells of fainting. His senses of smell and taste were impaired. He suffered great pain. The judgment does not appear to have been the result of passion and prejudice. Under such cir-

430

cumstances we may not be permitted to hold that the amount of damages which was awarded is excessive. (*Cooney* v. *Pirrelli*, 204 Cal. 4 [266 Pac. 273]; *Rowe* v. *Rennick*, 112 Cal. App. 576, 585 [297 Pac. 603]; 8 Cal. Jur. 838, sec. 92.)

■ Finally, it is asserted the judgment should be reversed because the court erroneously gave to the jury an instruction applying to the doctrine of last clear chance which, it is contended, has no application to the facts of this case. It is not claimed the language of the challenged instruction is erroneous or defective. There is no merit in this contention. It is proper to instruct the jury on the doctrine of last clear chance when there is substantial evidence on any valid theory of the case to support that principle. (*Sauer* v. *Eagle Brewing Co.*, 3 Cal. App. 127 [84 Pac. 425].) ■ The elements which are necessary to render the doctrine of last clear chance applicable are that the injured party is guilty of negligence; that he is in a position of danger of which he is either ignorant or from which peril he is unable to extricate himself; that the other party is aware of his imminent peril, or by the use of reasonable care should have known of the danger; that the accused person had a clear chance to avoid inflicting the injury complained of and failed to avail himself of that opportunity. (*Darling* v. *Pacific Elec. Ry. Co.*, 197 Cal. 702 [242 Pac. 703].) An appellant may not complain of an erroneous instruction when it is based on facts which are admitted by himself. (4 C. J. 711, sec. 2622.) In the present case the appellant admitted that he knew the plaintiff was in a position of peril, of which he was apparently unaware. He said in that regard:

"I was driving down the road, on my side of the road, and I met this car coming towards me, on my side of the road, . . . I honked my horn at him to attract his attention, *and I saw that he was not looking in my way,* and when we came close together *I saw he was not moving to get one way or the other,* and I swerved to the left, and as I did, he cut sharply to his right, and we came together."

The preceding admission of the defendant, together with other circumstances disclosed by the evidence, if true, furnish all the elements which would make it proper to give to the jury an instruction on the doctrine of last clear chance. It will be observed the defendant contended the plaintiff was guilty of negligence by driving his machine on the wrong

side of the highway. The defendant admitted that he knew of the plaintiff's imminent danger as the two cars were about to collide, and that the plaintiff was ignorant of his peril for he was not looking toward the defendant or making any effort to get out of his way. It further appears that there was a clear open space some 25 feet in width from the northerly edge of the pavement to the store building along which a reasonably cautious person might safely and properly drive around the defendant's right-hand side of the approaching car, and thus avoid the accident. These facts make the challenged instruction applicable. It was therefore not error for the court to have given that charge to the jury. The instruction merely contained a plain correct statement of the principle of law applicable to last clear chance.

 Although the plaintiff denied that he was driving his machine on the wrong side of the highway or that he was otherwise guilty of contributory negligence, he had a right to offer the instruction regarding last clear chance to rebut the defendant's evidence and theory that the plaintiff was negligent in driving on the wrong side of the pavement.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.